HUMBERT THURSTON C. SCOTT-HUNTINGTON, ADMINIS-
TRATOR AD PROSEQUENDUM OF THE ESTATE OF
AMERICO C. SCOTT-HUNTINGTON, DECEASED, PLAIN-
TIFF, v. OSCAR PEARSON AND ERNEST T. HAND, JR.,
DEFENDANTS.

Decided July 25, 1933.

For the rule, *James I. Bowers.*

Opposed, *George W. Allgair.*

LAWRENCE, C. C. J. This was a suit under the Death act tried before the court and a jury at the Somerset Circuit. A verdict was returned in favor of plaintiff for the sum of $4,425. Defendants took out the present rule to show cause and argued for a new trial on the ground that the verdict was contrary to the weight of the evidence, both as the issue of negligence and contributory negligence, and that the amount of the award was excessive.

The cause of action involved the death of a boy about ten years of age, as the result of being struck by an automobile owned by the defendant Pearson, in which he was at the time, and driven by the defendant Hand. The accident occurred on a public highway leading from Somerville toward Neshanic in front of a country school during the noon hour while the

children were out in the yard. Some of them were playing with a ball and it was thrown through the gateway of a hedge fence, which partly surrounded the yard, and rolled out to the center of the road. The Scott-Huntington boy ran after it, followed apparently by three other children. The latter evidently seeing the approaching automobile ran back to the gateway, but the former went on, although warned by one or two of the children to come back, reached the middle of the road and was seen to bend over to pick up the ball, when startled by the sound of the horn of the automobile, he straightened up and stood as though dazed. When the car was within four or five feet of him, he suddenly jumped or stepped in front of it. The driver pulled the car sharply to the left, but not in time to avoid striking him. He was knocked down and fatally injured. The vehicle went first to the left side of the highway, striking a telephone pole, and then across to the right side, where it stopped after running into the hedge fence, a distance of twenty-five or thirty feet beyond the place of the accident. The parents of the boy were his survivors and the suit was brought in their behalf, pursuant to the statute.

Counsel for defendants urged, under the rule, that there was no evidence whatever of negligence on the part of the driver of the automobile and that the only permissible inference of fact that could have been drawn was that the boy's own negligence was the proximate cause of his being struck. It was accordingly insisted that the trial judge should have controlled the case and taken it from the jury as a matter of law on the motion for a nonsuit or for a direction at the close of the trial. This seems not to be so, however, considering the age of the boy and the speed of the car at the time.

The driver's own statement was that he saw four children run out of the yard when the automobile was one hundred feet away and going at forty miles an hour; that three of them turned back, but the fourth went to the center of the road and leaned over to pick up something; that, as the horn of the car was sounded, the boy straightened up and stood still, whereupon he pulled the car to the left, and when it was four or five feet from the boy, he suddenly jumped or

stepped in front of it and was hit. He (the driver) was not able to say what rate of speed the automobile was reduced from the time he first saw the children to the place of the accident. He had applied the brakes, although the car had gone some distance after striking the boy. There was some testimony to the effect that the school building could have been seen, in the conditions existing at the time, at a distance of several hundred feet from the direction in which the car was being driven. While it did not appear that either of the defendants made any observation as the automobile approached, they testified that the hedge about the school yard obscured the view of it and that no sign indicated the presence of a school zone. This appears to have been discovered by them after the accident, the driver stating that in fact he was looking ahead and making no special observation in driving along as to the locality through which they were passing. It is apparent, however, that the speed at which the automobile was being driven at the time, in its causal relation to the accident, became a question for the jury. *Ferris* v. *McArdle,* 92 *N. J. L.* 580, 581; 106 *Atl. Rep.* 460; *Nichols* v. *Grunstein,* 105 *N. J. L.* 363; 144 *Atl. Rep.* 593; *Balog* v. *F. M. Mitchell Motor Co.,* 3 *N. J. Mis. R.* 1000; 130 *Atl. Rep.* 441; *Eastmond* v. *Wachstein,* 4 *N. J. Mis. R.* 966; 135 *Atl. Rep.* 67, and *DeLucia* v. *Bleha,* 5 *N. J. Mis. R.* 501; 137 *Atl. Rep.* 428. In the circumstances of the case, a review of the evidence leads to the conclusion that the verdict, as reflecting the finding of the jury on the question of the negligence of the defendant driver and the contributory negligence of the boy, was not so clearly contrary to the weight of it as to justify disturbing it.

It was also argued that the award of $4,425 was excessive. This does not appear to be so, considering the age of the boy and his physical and mental characteristics, under such cases as *Runz* v. *Hartman,* 2 *N. J. Mis. R.* 149; *Genatt* v. *Bentz,* 4 *Id.* 375; 133 *Atl. Rep.* 75; *Hoar* v. *Public Service,* 4 *N. J. Mis. R.* 716; 134 *Atl. Rep.* 184; *Amabile* v. *Crane,* 5 *N. J. Mis. R.* 149; 135 *Atl. Rep.* 692; *Jorgensen* v. *Wilberg,* 6 *N. J. Mis. R.* 79; 139 *Atl. Rep.* 904, and *Fedor* v. *Kuehne Chemical Co.,* 8 *N. J. Mis. R.* 298; 149 *Atl. Rep.* 827. The rule to show cause will be discharged.